[Cite as *In re J.A.*, 2014-Ohio-3423.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100913**

**In RE: J.A.**

A Minor Child

[Appeal by the Cuyahoga County Department
of Children and Family Services]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-13107373

**BEFORE:**    Blackmon, J., S. Gallagher, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**    August 7, 2014

**ATTORNEYS FOR APPELLANT, C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Laura M. Brewster
Assistant Prosecuting Attorney
4261 Fulton Parkway
Brooklyn, Ohio 44144


**ATTORNEYS FOR APPELLEE**

**For J.A.**

Brant N. Dichiera
Assistant Cuyahoga County Public Defender
9300 Quincy Avenue, 5th Floor
Cleveland, Ohio 44106

Cullen Sweeney
Assistant Cuyahoga County Public Defender
310 Lakeside Avenue
Cleveland, Ohio 44113

J.A., Father of J.A., pro se
775 East 152 Street
Room S15
Cleveland, Ohio 44110

H.K., Mother of J.A., pro se
14037 Granger Road
Maple Heights, Ohio 44137

Brenda Gray
Guardian Ad Litem
13940 Cedar Road
Suite 307
Cleveland Heights, Ohio 44118

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant Cuyahoga County Department of Children and Family Services ("CCDCFS") appeals the juvenile court's decision committing J.A. to the temporary custody of the agency. CCDCFS assigns the following error for our review:

> I. The trial court's order committing J.A. to the temporary custody of CCDCFS is a final appealable order.
>
> II. The trial court's order committing J.A. to the temporary custody of CCDCFS is against the manifest weight of the evidence and is not in the best interest of the child.

{¶2} Having reviewed the record and pertinent law, we affirm the juvenile court's decision. The apposite facts follow.

{¶3} On May 23, 2013, the state of Ohio filed a complaint in juvenile court alleging that J.A. (D.O.B. 09/09/1996) raped his nine-year-old sister while the family was living in a homeless shelter. On May 24, 2013, J.A. pleaded not guilty at his arraignment, and the juvenile court remanded him to the Cuyahoga County Juvenile Detention Center ("DH") pending further proceedings.

{¶4} On June 27, 2013, the juvenile court committed J.A. to the emergency temporary custody of CCDCFS, but continued his placement in the DH. On July 18, 2013, CCDCFS filed a motion to stay execution of the order of emergency

temporary custody to the agency, pending the outcome of the delinquency allegations.

**{¶5}** At the adjudication hearing on August 20, 2013, J.A. admitted to an amended charge of gross sexual imposition, a felony of the third degree if committed by an adult. On that same date, the juvenile court denied CCDCFS's motion to stay the emergency temporary custody order and underscored its previous order committing J.A. to the agency. Again, the juvenile court remanded J.A. to the DH.

**{¶6}** At a dispositional hearing on September 13, 2013, J.A.'s attorney orally motioned the court for an order committing J.A. to the temporary custody of CCDCFS on the grounds that J.A. was a dependent child. On September 26, 2013, the juvenile court journalized an entry indicating that it was holding the motion in abeyance and continued the matter for a full hearing. The juvenile court then released J.A. from the DH to his CCDCFS case worker for placement through the agency.

**{¶7}** At a second dispositional hearing on October 24, 2013, Danielle Yencha, investigative probation officer, presented a dispositional report and recommendation. Yencha indicated that CCDCFS has been involved with the family for the preceding ten years, generally for father's abusive behavior, as well

as J.A.'s destructive and abusive behavior. Yencha indicated that J.A. was abusive and physically aggressive towards his siblings and abusive to his mother.

{¶8} Yencha also indicated that J.A. has been diagnosed with ADHD, mood disorder, schizoaffective disorder, bipolar features, depressive disorder, pervasive developmental disorder, and disruptive behavior. Medical professionals have prescribed a variety of medication including Concerta, Ritalin, Seroquel, Clonidine, Trazodone, Zyprexa, and Risperdal to address J.A.'s condition. Yencha indicated J.A.'s psychiatrist had recently took J.A. off the medication due to a lack of response.

{¶9} In addition, Yencha indicated that because J.A. sexually molested his sister, his mother did not feel safe for him to return home. Yencha discussed the Mokita Assessment that had been ordered. Yencha stated that the assessment revealed that J.A. lacked the proper knowledge of legal and illegal sexual behavior, and thus posed a risk to the community. The assessment concluded that J.A. was hardwired and had very little opportunity for true behavior change.

{¶10} Yencha indicated that J.A. was residing at Cleveland Christian Home, was involved in sexual counseling, and was slowly making progress. Yencha recommended that J.A. remain in the Cleveland Christian Home's residential treatment program.

{¶11} Laura Brewster appeared on behalf of CCDCFS and voiced opposition to the motion for an order of temporary custody of J.A. to the agency. Brewster argued that J.A. posed a risk to the community including his sister because of his behavior and psychological issues. Brewster maintained that J.A. should be placed through the juvenile court and not the agency.

{¶12} At the final dispositional hearing on December 12, 2013, Yencha reiterated the report from the previous dispositional hearing. Anthony Cook, probation manager, reported that J.A.'s mother was still unwilling to have her son return home and argued that mother's unwillingness renders J.A. a dependent child. Cook recommended that CCDCFS retain custody of J.A., so that they could provide transitional services upon completion of treatment. Brewster re-voiced the agency's opposition to the order of temporary custody.

{¶13} The juvenile court classified J.A. as a Tier II sexual offender, committed him to the legal custody of the Ohio Department of Youth Services ("ODYS") for six months, but suspended the commitment and placed him on one year of community control. The juvenile court also committed J.A. to the temporary custody of CCDCFS, but ordered him to continue at the Cleveland Christian Home's residential treatment facility. CCDCFS now appeals.

### Final Appealable Order

{¶14} We begin by setting forth why the order granting temporary custody is final and appealable under R.C. 2505.02. Immediately after CCDCFS appealed the juvenile court's decision committing J.A. to the custody of its agency, J.A. filed a motion to dismiss on the grounds that the decision was not final and appealable. For the reasons that follow, we decline to dismiss the appeal.

{¶15} Appellate courts "have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district[.]" Ohio Constitution, Article IV, Section 3(B)(2). If a court's order is not final and appealable, we lack jurisdiction to review the matter and we must dismiss the appeal. *In re S.M.B.*, 8th Dist. Cuyahoga No. 99035, 2013-Ohio-1801, ¶ 4.

{¶16} R.C. 2505.02(B)(2) provides that an order is final and appealable if it "affects a substantial right made in a special proceeding or upon a summary application in an action after judgment." "Substantial right" includes "a right that * * * a statute * * * entitles a person to enforce or protect." R.C. 2505.02(A)(1). A "special proceeding" is "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(2).

{¶17} Juvenile court proceedings are special proceedings. *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 360, 1994-Ohio-302, 626 N.E.2d 950. *See*

*also In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398, ¶ 12 ("[C]ustody hearings are special proceedings"). It follows, then, that if the temporary custody order affects a "substantial right," the order is final and appealable.

**{¶18}** In the instant case, once the court ordered CCDCFS to assume temporary custody, CCDCFS assumed statutory obligations to act in J.A.'s best interest. *See* R.C. 5153.16(A)(7).   Recently, in *In re C.L.M.*, 8th Dist. Cuyahoga No. 99622, 2013-Ohio-4044, we stated:

> CCDCFS is required to ("[a]ccept custody of children committed to the public children services agency by a court exercising juvenile jurisdiction."); R.C. 5153.16(A)(4) (mandating that CCDCFS provide a level of care that the agency considers to be in the best interest of the child). The emergency custody order required CCDCFS to take on the parental role of providing for C.L.M.'s basic needs (food, clothing, shelter), his educational needs, and his medical and psychological needs.   In short, the order imposed custody on CCDCFS where no custody previously existed, and required CCDCFS to fulfill a multitude of statutory obligations, which included finding an appropriate placement for a tier II sex offender, who expresses homicidal ideations.

*Id*. at ¶ 17.

**{¶19}** Here, for the same reasons stated in *In re C.L.M.*, we conclude that a substantial right is affected in this case.   Because the temporary custody order affects a substantial right made in a special proceeding, the order is final and

appealable under R.C. 2505.02(B)(2). Consequently, we have jurisdiction to review the appeal. Accordingly, we overrule the first assigned error.

## Temporary Custody

{¶20} In the second assigned error, CCDCFS argues the juvenile court's decision granting the agency temporary custody of J.A. is against the manifest weight of the evidence and not in J.A.'s best interest.

{¶21} When reviewing custody issues, a juvenile court's decision is granted great deference and will not be disturbed absent an abuse of discretion. *Smith v. Smith*, 12th Dist. Butler No. CA2005-04-091, 2006-Ohio-2136. More than mere error of judgment, an abuse of discretion requires that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶22} Further, the discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *In re L.C.,* 8th Dist. Cuyahoga No. 93657, 2010-Ohio-778, ¶ 16, citing *In re Satterwhite*, 8th Dist. Cuyahoga No. 77071, 2001-Ohio-4137.

{¶23} In the instant case, CCDCFS does not dispute that the juvenile court has the authority to issue an order granting temporary custody to the agency after adjudicating a child delinquent. Nor does CCDCFS dispute the juvenile court's

authority under R.C. 2151.353 to issue orders for the care and protection of an abused, neglected, or dependent child. Instead, CCDCFS argues that J.A. is not abused or neglected, thus the juvenile court's order does not advance the purposes of R.C. 2152.01(A), which include the following:

> * * * [T]o provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim and rehabilitate the offender.

{¶24} However, despite CCDCFS's protestations, the record establishes that J.A. is a dependent child and thus, the trial court had authority under R.C. 2151.353 to issue the instant order of temporary custody to the agency. Throughout the proceedings below, the record reveals that J.A.'s mother would not allow him to return home because of the underlying sexual assault of his sister. The record also reveals that J.A.'s mother had difficulty maintaining stable housing and was actually living in a homeless shelter at the time of the offense.

{¶25} In addition, the record also revealed that J.A. suffered from a host of psychological problems and had been diagnosed with ADHD, mood disorder, Schizoaffective Disorder, Bipolar Features, Depressive Disorder, Pervasive Developmental Disorder and Disruptive Behavior. Further, the record reveals that J.A. was in a residential treatment facility geared to addressing his psychological and behavioral challenges. Finally, the record reveals that J.A. would be 18 years

old by the time the ordered community control would end. Therefore, the order of temporary custody to the agency would be important for the transitional services that J.A. would need upon the completion of treatment and the end of the community control sanctions.

{¶26} Based on the foregoing, we conclude the juvenile court did not abuse its discretion in committing J.A. to the custody of CCDCFS. Accordingly, we overrule the second assigned error.

{¶27} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The trial court's adjudication of delinquency having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of commitment.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
SEAN C. GALLAGHER, P.J., (CONCURS
WITH ATTACHED OPINION)

SEAN C. GALLAGHER, P.J., CONCURRING:

**{¶28}** I concur with the judgment and analysis of the majority on both assigned errors, but write separately to address concerns raised by this case.

**{¶29}** First, I am perplexed to see we are required to analyze whether we have a final appealable order ostensibly because it is CCDCFS, or more properly the state of Ohio, initiating this appeal. Although the majority opinion with its reliance on the case of *In re C.L.M.,* 8th Dist. Cuyahoga No. 99622, 2013-Ohio-4044, is on point, it would seem the legislature should examine whether R.C. 5153.16 or R.C. 2945.67 should afford prosecutors an express right to appeal in cases where temporary custody is intertwined with an adjudication of delinquency.

**{¶30}** Because I can find no provision in R.C. 2152.19 that limits a judge's discretion to award or grant temporary custody to CCDCFS after adjudicating a child delinquent, I must concur in the resolution of the second assigned error. Nevertheless, this is a slippery slope that can lead judges to duplicating services and consuming limited resources, albeit with a noble intent, but with a costly result. At some point, the legislature may wish to look more closely at the dividing line

between delinquency and dependency. Although they may arguably be interrelated at times, resources are not limitless.